United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY SOBEL, M.D.,<br><br>    Plaintiff,<br><br>  v.<br><br>SUN LIFE AND HEALTH<br>INSURANCE COMPANY, INC.,<br><br>    Defendant.<br>                                        / | No. C 08-01682 WHA<br><br>**ORDER STAYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR MORE FINDINGS** |

**INTRODUCTION**

In this ERISA action challenging a denial of a claim for long-term disability benefits, defendant moves for summary judgment. Because this order finds that a factual determination must be made as to the cause of plaintiff's medical condition, the motion is **STAYED**. The action shall be **STAYED** for ninety calendar days to allow the plan administrator to reconsider plaintiff's claim.

**STATEMENT**

Plaintiff Dr. Jerry Sobel was employed as a physician by the Physiatry Medical Group, Inc., in Redwood City. The medical group sponsored an employee disability plan. The plan was insured by defendant Sun Life. Plaintiff was a participant in the plan.

To be eligible for disability benefits, an employee had to be totally or partially disabled. To be totally disabled, an employee must have been "unable to perform the material and

1  substantial duties" of the employee's occupation (Exh. C at 13).  The "occupation" of a
2  physician under the plan was "the general or sub-speciality in which he is practicing for which
3  there is a specialty or sub-specialty recognized by the American Board of Medical Specialties"
4  (Exh. B at 151).  The plan limited benefits for disabilities that were due to mental illness to a
5  maximum of 24 months.

6  In September 2006, plaintiff began experiencing extreme fatigue and other symptoms.
7  Plaintiff saw Dr. Julie Wissink.  Dr. Wissink noted symptoms of fatigue, racing heart rate,
8  severe cough, rash, bronchitis, and gastro esophageal reflux, which is the regurgitation of
9  stomach contents into the esophagus.  *Stedman's Medical Dictionary*, 27th Edition.  Lab tests
10 indicated that plaintiff had contracted pertussis, which is whooping cough.  He also tested
11 positive for Epstein-Barr virus, which is the virus that can cause infectious mononucleosis,
12 or "mono" (*ibid.*).  Dr. Wissink noted that plaintiff was only able to work half-days due to his
13 symptoms (Harris Decl. 84–86).

14 Plaintiff's condition worsened in November and December.  He stopped working on
15 December 5 due to his symptoms, which included severe fatigue.

16 Plaintiff sought the opinion of two more doctors.  Dr. Larry Sobel, plaintiff's brother,
17 examined him in January and February of 2007.  Dr. Sobel diagnosed plaintiff with chronic
18 fatigue syndrome with secondary Epstein-Barr and herpes simplex 6 infections (*id.* at 124).
19 On February 12, plaintiff was evaluated by Dr. Jose Montoya at the Stanford Hospital Clinics.
20 Dr. Montoya also diagnosed plaintiff with chronic fatigue syndrome (*id.* at 159–61).

21 Plaintiff submitted his claim for long-term disability benefits to Sun Life on February 22.
22 On February 28, plaintiff underwent a clinical reevaluation by Dr. Wissink, who also diagnosed
23 him with chronic fatigue syndrome.  She noted that plaintiff was not able to continue working on
24 a full-time or part-time basis (*id.* at 152–56).

25 Upon review of plaintiff's claim for benefits, defendant discovered in plaintiff's medical
26 history that he had received psychiatric care in the past.  When asked about this history, plaintiff
27 told a Sun Life claims consultant that he was treating with a psychologist because a side effect
28 from an antibiotic prescribed for him was depression.  He stated that depression was not a

2

1 primary diagnosis and he was not filing a claim due to depression. Defendant also requested the
2 records of plaintiff's treatment with Dr. Alexander Vuckovic, a psychiatrist. Dr. Vuckovic had
3 completed an attending-physician's statement for a prior claim by plaintiff for long-term
4 disability benefits in November 2000. Dr. Vuckovic had given plaintiff a primary diagnosis
5 of "major depressive disorder."

6   Defendant submitted plaintiff's claim file for review by two medical consultants.
7 Dr. Bill Hall concluded that plaintiff did not have chronic fatigue syndrome because he was
8 "not able to identify clinical or laboratory information for Dr. Jeffrey Sobel with which to
9 support a medically limiting disease or disorder" (*id.* at 548). Dr. Kent Crossley concluded
10 that plaintiff could not have chronic fatigue syndrome because he had a major depressive
11 disorder (*id*. at 199).

12   Defendant also utilized a productivity analysis performed by Nancy Clark, RN.
13 She found that plaintiff's billing from January 2005 until December 2006, when plaintiff left
14 work, was consistent with what would be expected from a full-time physician in plaintiff's
15 occupation.

16   Defendant denied plaintiff's claim on June 1, 2007, citing the findings of Drs. Hall
17 and Crossley and Clark's productivity analysis as its primary reasons. Plaintiff submitted a
18 letter from Dr. Richard Robinson, plaintiff's psychiatrist, stating that he saw "no evidence that
19 [Sobel's] current condition is psychiatrically driven" (*id*. at 351). Plaintiff appealed the denial
20 on October 18. In response, Sun Life notified plaintiff, for the first time, that it was arranging
21 an independent neuropsychological examination. Plaintiff refused, through advice of counsel,
22 to submit to the examination. On November 19, defendant submitted plaintiff's file to another
23 medical consultant for review. Dr. Katherine Hollister concluded that "the claimant has not
24 fully met diagnostic criteria in the available records" to support a diagnosis of chronic fatigue
25 syndrome. Dr. Hollister also stated that it was not possible to fully understand such a diagnosis
26 without "contemporaneous psychiatric records . . . and, potentially, a neuropsychiatric
27 [independent medical examination]" (*id*. at 261–62).

28

3

On December 12, defendant received medical records from Dr. Robinson. On December 25, another medical consultant reviewed plaintiff's entire file and recommended that an independent medical examination would help resolve the question of whether plaintiff's fatigue was psychiatrically driven. Defendant again requested such an examination, and plaintiff again refused.

Plaintiff filed suit under 29 U.S.C. 1132, the civil enforcement provision of ERISA, to recover benefits. Defendant now moves for summary judgment.

**ANALYSIS**

"Remand to the plan administrator is proper where a factual determination as to the cause of claimant's disability needs to be made." *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 951 (9th Cir. 1993). A factual determination as to the cause of plaintiff's disability must be determined for two reasons. *First*, an independent neuropsychiatric examination has not been conducted on plaintiff to eliminate the possibility that his chronic fatigue is psychiatrically driven. *Second*, Sun Life based its denial on a finding that plaintiff's fatigue was psychiatrically driven even though plaintiff's psychiatric and psychological records were not yet part of the administrative record.

### 1. INDEPENDENT NEUROPSYCHIATRIC EVALUATION.

The Sun Life plan provided that the insurer "at its own expense has the right to have any person, whose injury or sickness is the basis of a claim, examined by a physician, or other health professional or vocational expert of its choice; and/or interviewed by an authorized Sun Life representative." The policy also provided that the insurer may use this right "as often as reasonably required." It further provided that long-term disability benefits will not be payable to a beneficiary during any period the beneficiary does not submit to any medical examination as requested by Sun Life (Exh. C at 22).

Sun Life requested that plaintiff undergo an independent neuropsychological examination. Defendant contends that plaintiff's refusal to undergo the examination automatically nullifies his claim to benefits. Plaintiff contends his refusal to submit to the examination does not nullify his claim because the request was not "reasonably required" under

4

the terms of the plan.  Plaintiff argues that the request was not reasonably required because the request was made *after* the initial denial of benefits.

Regardless of the merits of either argument, the fact remains that an independent neuropsychiatric examination must be conducted to resolve plaintiff's claim.  *First*, defendant can arguably deny benefits so long as plaintiff does not submit to the examination.  *Second*, the examination is necessary to eliminate the possibility that plaintiff's fatigue is psychiatrically driven, which would rule out a diagnosis of chronic fatigue syndrome.  Plaintiff's claim is remanded to the plan administrator to conduct the examination.

**2.   SOBEL'S PSYCHIATRIC AND PSYCHOLOGICAL RECORDS.**

On remand, the review must include an examination of the records of Drs. Alexander Vuckovic, Richard Robinson, and Hugh Baras.  Defendant did not consider any of those records in its initial review of plaintiff's claim. Both parties assign blame for this situation.  Regardless of the merits of their arguments, the fact remains that the records are now available, or should be made available, and must be included in a review of plaintiff's claim, in addition to all other medical records already on file.

**3.   INSTRUCTIONS FOR REMAND.**

To reiterate, the plan administrator will conduct an independent neuropsychiatric examination, and it will review all of plaintiff's medical records, and plaintiff must cooperate in the examination.  There also appears to be an ambiguity as to the definition of chronic fatigue syndrome on which Sun Life is basing its decision.  In its denial letter to plaintiff, Sun Life wrote (Exh. A at 170):

> Dr. Sobel does not have chronic fatigue syndrome.  The chronic fatigue syndrome is defined by criteria developed by the CDC in 1994.  These criteria [see reference by Fukada] would exclude Dr. Sobel.  The criteria note that the diagnosis of the syndrome cannot be made in an individual with a major depressive disorder.  Because he has that diagnosis, Dr. Sobel cannot meet the definition of chronic fatigue syndrome.

(bracketed comment in original letter).  Plaintiff argues that Sun Life selectively excerpted from the Fukada article in order to reach its conclusion that plaintiff did not have chronic fatigue syndrome.  Plaintiff included a full version of the article in its declaration in support of

5

1  his opposition to the motion for summary judgment. Plaintiff did not alert the Court that
2  this article was *not* part of the administrative record. The full article was also not cited on
3  administrative appeal. For this reason, defendant argues that the article should not be
4  considered. "Absent unusual circumstances, the review of an administrative decision should be
5  limited to the evidence that was before the claims administrator." *Kearney v. Standard*
6  *Insurance Co.*, 175 F.3d 1084, 1090–1091 (9th Cir. 1999).

7  The article should be considered for two reasons. *First*, defendant relied on the CDC
8  guidelines as a primary reason for denying plaintiff's claim. If the guidelines were not
9  accurately stated, defendant's reasons for denial would be highly suspect. Notably, defendant
10 only makes a procedural attack on the article and does not object to it on the ground that plaintiff
11 had misidentified the source of Sun Life's CDC reference. *Second*, defendant referenced the
12 CDC guidelines in the section of its policy that defined chronic fatigue syndrome (Exh B. at
13 28). Defendant argues that this section of the policy actually does not apply to plaintiff
14 because plaintiff's employer did not choose this optional definition of chronic fatigue syndrome.
15 This argument leaves one to wonder *what* definition applies? Sun Life clearly relied on the
16 CDC guidelines in denying plaintiff his benefits. Defendant also submitted the policy, including
17 the section referencing the guidelines, as part of the administrative record. This raises the
18 question whether defendant is moving the target with facile use of definitions.

19 The Fukada comment on chronic fatigue syndrome and a "major depressive disorder"
20 stated in full that a patient would be excluded from the diagnosis of unexplained chronic fatigue
21 if he had "[a]ny past or current diagnosis of a major depressive disorder *with* psychotic or
22 melancholic features; bipolar affective disorders; schizophrenia of any subtype; delusion
23 disorders of any subtype; dementias of any subtype; anorexia nervosa; or bulimia nervosa"
24 (Harris Decl. at 227)(emphasis added). Clearly missing from plaintiff's medical records is any
25 diagnosis of "psychotic or melancholic features" or any other psychiatric condition mentioned.

26 The factual determination that must be made is whether plaintiff had a major depressive
27 disorder, according to the CDC guidelines, when he left work on December 5, 2006, which
28 would *preclude* a finding that he suffers from chronic fatigue syndrome. Even though defendant

6

1 claims that the CDC guidelines do not apply because plaintiff's employer did not choose that
2 optional definition of chronic fatigue syndrome, those guidelines were the basis for its initial
3 denial and it cannot change the standard now.  "Ambiguities in the plan are to be resolved in
4 [the claimant's] favor."  *Patterson*, 11 F.3d at 950.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is **STAYED** and plaintiff's claim is remanded to the plan administrator.  This action shall be **STAYED FOR NINETY CALENDAR DAYS** to allow the plan administrator to reconsider plaintiff's claim in accordance with this order.  The plan administrator will be well advised to be fair and professional and fully explain its decision, using unbiased professional advisors.  A further case management conference will be held on **MARCH 12, 2009** AT **11:00 A.M**.

**IT IS SO ORDERED.**

Dated:  December 9, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE